IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MYA HILL-SMITH                                                              PLAINTIFF

V.                              CASE NO. 5:20-CV-5051

SILVER DOLLAR CABARET, INC.;
PLATINUM CABARET, LLC; and
ANTHONY K. CATROPPA                                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Attorney Fees and a Memorandum Brief in Support (Docs. 14 & 15) filed by Plaintiff Mya Hill-Smith. Ms. Hill-Smith seeks $3,239.00 in attorneys' fees and $685.00 in costs accrued by her counsel at the Sandford Law Firm. The deadline to respond having passed without any filing by the Defendants in this matter, the Court finds that the matter is ripe for decision and will **GRANT IN PART AND DENY IN PART** the Motion for Attorney Fees (Doc. 14).

### I. BACKGROUND

This matter initially came before the Court on a motion to confirm an arbitration award. *See* Doc. 2. Ms. Hill-Smith previously filed claims under the Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA") in federal court, but she was compelled to arbitrate based on the language of her contract with the Defendants. The arbitrator found for Ms. Hill-Smith on her wage-and-hour claim and awarded her $3,672.00 in unpaid wages and an equal amount of liquidated damages. The arbitrator also awarded Ms. Hill-Smith $14,056.99 for her reasonable attorney fees, reduced from the $21,141.25 initially requested, and $300.00 in costs, also reduced by $740.00 from the amount requested.

1

The arbitrator's final award was entered on January 28, 2020. On March 20, not having received any payment from Defendants, Ms. Hill-Smith filed her motion seeking entry of judgment on the arbitrator's award. Based on Defendants' representations that they were negotiating a consent judgment, the Court granted Defendants several extensions of their response deadline. *See* Docs. 7–11. Once the extensions expired and neither notice of a consent judgment nor a response brief was filed, the Court filed its Opinion and Order of July 8, granting Plaintiff's motion, and entered judgment. *See* Docs. 12 & 13. Ms. Hill-Smith has now filed the instant Motion seeking additional attorney fees and costs associated with filing the motion to confirm arbitration award, negotiating a possible consent judgment, and filing the pending Motion for Attorney Fees.

## II. LEGAL STANDARD

Where an employer has been found to have violated the AMWA, he shall be liable to the employee for "costs and such reasonable attorney's fees as may be allowed by the court." Ark. Code Ann. § 11-4-218(a)(1)(B)(ii).[1] In determining a reasonable attorney fee award in FLSA and AMWA cases, the starting point is the lodestar, which multiplies the number of hours reasonably expended by a reasonable hourly rate. Then, "in extraordinary circumstances" the Court may adjust the lodestar, but "there is a strong presumption that the lodestar is sufficient." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010). In determining whether such extraordinary circumstances exist, the Court "may consider other factors identified in *Johnson v. Georgia Highway Express, Inc.*,

---

[1] The arbitrator's formal finding as to Defendants' liability was for violations of the AMWA; no final ruling was made as to liability under the FLSA. However, the Court sees no basis on which to distinguish the analysis under the Arkansas statute from the analysis of reasonable fees and costs under 29 U.S.C. § 216(b) of the FLSA and therefore finds precedent discussing reasonable fees under the FLSA equally applicable in this case.

2

488 F.2d 714, 717–19 (5th Cir. 1974), though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."[2] *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983).

"The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Morales v. Farmland Foods, Inc.*, 2013 WL 1704722, at *5 (D. Neb. Apr. 18, 2013) (citing *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994)). "A reasonable fee is one that is adequate to attract competent counsel, but does not produce windfalls to attorneys." *Vines v. Welspun Pipes, Inc.*, 2020 WL 3062384 (E.D. Ark. June 9, 2020) (quoting *Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991)) (modifications adopted). "An attorney fees award under a fee-shifting statute should be comparable to what is traditionally paid to attorneys who are compensated by a fee-paying client." *Morales*, 2013 WL 1704722, at *7 (citing *Missouri v. Jenkins*, 491 U.S. 274, 287 (1989)). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. A district court has discretion to determine the number of hours to be awarded when conducting the lodestar calculation. *See Fires v. Heber Springs Sch.*

---

[2] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

*Dist.*, 565 F. App'x 573, 576 (8th Cir. 2014) (reviewing the district court's decision to classify hours as excessive for abuse of discretion and "giving due deference to the district court's unique understanding of the legal and factual issues implicated by this matter and counsel's handling of them"). In exercising this discretion, the court "should weigh the hours claimed against [the court's] own knowledge, experience, and expertise of the time required to complete similar activities." *Gilbert v. City of Little Rock*, 867 F.2d 1063, 1066 (8th Cir. 1989) (quotation omitted).

### III. DISCUSSION

Courts in this District and in the Eastern District of Arkansas have had many occasions to consider fee requests for the attorneys of the Sanford Law Firm, Plaintiff's counsel in this matter, and have repeatedly found their requested fees to be unreasonable and reduced them. The petition currently before the Court is no different.

#### A. Number of Hours Reasonably Expended

Over the years, courts across Arkansas considering billing records submitted by the Sanford Law Firm have held the number of hours reasonably expended in a case to be fewer than those claimed by the firm. These opinions highlight habits such as over-staffing cases, micro-managing associates, billing attorneys' rates for administrative tasks, and failing to self-audit records that are submitted to the court for reimbursement, all of which tend to inflate the time spent by attorneys beyond what the firm could reasonably bill a paying client. *See, e.g.*, *Beasley v. Macuil's Tire and Service Ctr., LLC*, 2020 WL 3472556, at *2 (E.D. Ark. June 25, 2020) (noting that the time records filed by Sanford Law Firm "are replete with instances of objectionable billing practices, including an excess of intraoffice communications, duplicate document reviews by multiple lawyers,

4

billing at lawyers' rates for clerical work, etc." and concluding that the court "will not hold Defendants responsible for these billing practices"); *Vines*, 2020 WL 3062384, at *4 (considering the reasonableness of the hours expended and concluding that "no reasonable, efficient law firm would practice this way, but for the fact that it primarily engages in fee-shifting litigation. Certainly, no fee-paying client would tolerate these practices"); *Cook v. Beemac Foods, LLC*, 2019 WL 2418753, at *2 (W.D. Ark. June 10, 2019) (finding that "[e]ven [p]laintiff's reduced invoices reflect unreasonable billing" like having twelve attorneys work on the case and entries reflecting intrafirm emails and conferencing among those attorneys); *Murdock v. McNair*, 2018 WL 6314569, at *2 (W.D. Ark. Dec. 3, 2018) (striking "time spent by the senior attorneys mentoring [a junior attorney]" because there was no reason "this granular level of management and oversight was warranted"); *Jones v. RK Enters. of Blytheville, Inc.*, 2016 WL 1091094, at *3–4 (E.D. Ark. Mar. 21, 2016) (reducing the number of reasonable hours in part based on the observation that many of the filings are form documents that can be recycled from previous cases and need only be tailored); *Burchell v. Green Cab Co., Inc.*, 2016 WL 894825, at *3 (W.D. Ark. Mar. 8, 2016) (finding the reasonable number of hours spent on the case to be about half of the hours claimed by the Sanford Law Firm and excluding "excessive amount[s] of time for the task performed," duplicative intra-firm communications, and unnecessary oversight). Despite these repeated admonitions over several years by courts across the state, some of the same habits are on display in the Motion for Fees currently before this Court.

The instant Motion includes only the filing of the motion to confirm the arbitration award and the fee petition, since the arbitrator's award provided the attorney fees related

to the arbitration proceedings. Both motions before this Court were uncontested. The parties also attempted to negotiate a consent judgment, which was ultimately unsuccessful. The billing records indicate that three separate attorneys spent a total of 15.4 hours on this matter, which the firm voluntarily reduced by 13 percent to 13.4 hours. The Court finds that this number still exceeds the number of hours reasonably expended to confirm an arbitration award and seek the related fees and costs.

Attorney Rebecca Matlock is listed as having drafted the motion for confirmation and the fee petition. The records submitted indicate that Ms. Matlock spent 0.7 hours drafting the motion and attorney Steve Rauls spent 0.5 hours reviewing and editing Ms. Matlock's work. The Court accepts this as time reasonably spent on the litigation. Ms. Matlock also indicates that she spent approximately 5 hours preparing the fee petition. This seems excessive to the Court given that it is largely a form motion and brief that could easily be filed in any wage-and-hour litigation with small modifications. *See Jones*, 2016 WL 1091094, at *3 (finding 3 hours billed for preparing a complaint to be unreasonable because "although the form complaint is 'the product of counsel's expertise and experience, the time billed for tailoring this form is too much'").[3] The Court will treat 3 hours as reasonably spent by Ms. Matlock on preparing this petition for fees.

The Court understands that after the motion for confirmation of the arbitration award was filed but before the Court granted it and entered judgment, the parties

---

[3] Additionally, the Court suspects that some of that time was spent on tasks like preparing the three exhibits that are simply different arrangements of the billing invoices. While these were helpful to the Court, their preparation is administrative work that should have been billed at a staff rate, not at an attorney's rate. In fact, the Court notes that the invoice reflects a telephone conference between Ms. Matlock and "TF"—which the Court infers to be the firm's office manager, Tracy Freeman—about drafting the fee petition that is billed at Ms. Matlock's hourly rate. *See* Doc. 14-1, p. 3, entry dated 7/13/2020.

attempted to negotiate a consent judgment, a negotiation initiated by Defendants. The Court will approve 2 hours of work related to the consent judgment by Mr. Rauls, who appears to have done the substantive research and drafting. The time spent by Mr. Sanford reviewing Mr. Rauls's work and emails from opposing counsel is not reasonable given that, per Mr. Sanford's own affidavit, Mr. Rauls has 9 years of experience and "has litigated numerous FLSA cases through settlement or trial." (Doc. 14-2, p. 6). The Court will also approve 0.2 hours that Mr. Rauls indicates was spent in communication with the Plaintiff in this matter.

The Court finds that the remaining time billed by the Sanford Law Firm consists primarily of Mr. Sanford overseeing the details of a case that already had an experienced attorney assigned to it in Mr. Rauls[4] and reading and responding to emails from opposing counsel, for which Mr. Sanford seeks compensation for 2.3 hours *in addition to* correspondence related to negotiating a possible consent judgment. Billing $737.50 for reading and responding to emails in such a straightforward and uncontested matter seems patently unreasonable to the Court and will be disallowed. Mr. Sanford bills nearly 4.5 hours in addition to 9 hours billed by two other attorneys. While Mr. Sanford is the attorney of record in this matter, it is clear from the billing records that the substantive work was done by Ms. Matlock and Mr. Rauls. The Sanford Law Firm may choose to have Mr. Sanford personally oversee every aspect of run-of-the-mill motion practice requiring

---

[4] *See, e.g.*, 3/20/2020 "examination of filed motion"; 3/22/2020 "examination of Clerk's notice"; 5/22/2020 "examination of response-filed"; 6/9/2020 "examination of filed- motion for extension"; 7/8/2020 "examination of judgment"; 7/8/2020 "examination of opinion and order."

no court appearance, but it will not be permitted to pass the associated costs of doing so on to Defendants.

Again, the Court emphasizes that this matter involved filing a form motion to confirm the arbitration award, which was uncontested. The preparation of the fee petition represents by far the largest chunk of hours requested in this Motion. In her brief in support, Plaintiff emphasizes that it was Defendants' conduct that made it necessary to seek a judgment from the Court, thereby accruing additional attorney fees. Plaintiff continues, "Because one hundred percent of Plaintiff's fees and costs are the result of Defendants' foot-dragging, Defendants should bear one hundred percent of the burden of those fees and costs." (Doc. 15, p. 14). It is true that Defendants are required to pay Plaintiff's *reasonable* attorney fees, but the fee petition is not an opportunity for Plaintiff's attorneys to punish Defendants' failure to cooperate fully with them. Plaintiff was entitled to have the Court enter judgment on the arbitrator's award and to oblige Defendants to cover her reasonable attorney fees for doing so, as permitted by statute, but she is not permitted to seek payment for excessive hours unreasonably spent for which her attorneys would never try to bill a paying client. For these reasons, the Court finds reasonable 3.7 hours of work by Ms. Matlock, 2.7 hours of work by Mr. Rauls, and 1 hour by Mr. Sanford.

### B. Reasonable Hourly Rate

Having determined the number of hours reasonably spent on the litigation, the Court must now determine the reasonable hourly rate at which that work can be billed. The Sanford Law Firm has been chastised numerous times by judges in the Eastern and Western Districts in Arkansas for seeking unreasonable and inconsistent hourly rates, but

they have apparently failed to internalize this feedback. *See, e.g., Vines*, 2020 WL 062384, at *2–3 & n.30 (collecting cases). As Judge Wilson pointed out in an order on a motion to approve attorney fees only a couple of months ago, in requesting $325 per hour for himself (as he does here), Mr. Sanford "ignores the fact that his request for $325 an hour has repeatedly been rejected by judges in both the Eastern and Western Districts of Arkansas. Yet, here he is again seeking $325 an hour, as it if is an opening bid in a negotiation." *Id.* at *2 (internal citations omitted). This Court has also held that an hourly rate of $325 is too high for Mr. Sanford and posited that $300 per hour was a more appropriate hourly rate for this attorney. *See Murdock v. McNair*, 2018 WL 6314569, at *2 (W.D. Ark. Dec. 3, 2018). The Court sees no reason to reach a different conclusion here.

The fee petition also represents that $225 is a reasonable hourly rate for Mr. Rauls,[5] ignoring the fact that in the last three months, both Judge Wilson and Judge Marshall in the Eastern District have found $175 per hour to be a more reasonable hourly rate for an attorney of Mr. Rauls's level of experience. *See Vines*, 2020 WL 3062384, at *2. This Court does not consider the legal market in Northwest Arkansas to command greater hourly rates than those in Little Rock and will therefore concur with Judges Wilson and Marshall that $175 per hour is a reasonable rate for Mr. Rauls. Finally, the fee petition

---

[5] In fact, the table provided in the brief in support (Doc. 15, p. 9) and Mr. Sanford's affidavit (Doc. 14-2, p. 6) suggests an hourly rate of $250. However, the actual multiplier used to arrive at the amount claimed in the table appears to be $225 per hour, not $250. Additionally, the billing invoices submitted at Docs. 14-1, 14-3, and 14-4 list Mr. Rauls's rate as $225 per hour. Therefore, the Court will assume that where $250 appears, it is an error, though this error only adds to the feeling that the requested rates are somewhat arbitrary and that the firm views the rates in its petition as a starting point in a negotiation with the court.

seeks $190 per hour for work performed by Ms. Matlock. Just a few months ago, however, the Sanford Law Firm submitted invoices requesting $125 an hour for work done by Ms. Matlock. *See id.* No explanation is given for why Ms. Matlock's rate should have increased 50 percent since June. Therefore, the Court will find that $125 is a reasonable rate for work done by Ms. Matlock in this case.

Based on the number of hours reasonably expended and the reasonable hourly rate, the Court calculates the appropriate attorney fee in this matter as $1235. Plaintiff may also recover costs in the amount of $685.

## IV. CONCLUSION

For the reasons given above, Plaintiff's Motion for Attorney Fees (Doc. 14) is **GRANTED IN PART AND DENIED IN PART**. The Sanford Law Firm is entitled to $1235 in fees and $685 in costs from Defendants.

**IT IS SO ORDERED** on this 14th day of August, 2020.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE